### J. A. & D. WILLINK *vs.* J. & R. J. RENWICK.

One of two plaintiffs in a judgment, who has become an *insolvent debtor* and *assigned his property* for the purpose of obtaining a discharge under an insolvent act, cannot subsequently be joined as a plaintiff in an action on the judgment: the suit must be prosecuted in the names of the *solvent* plaintiff *and* the *assignees.*

To a *scire facias quare executionem non* on a judgment in favor of John A. Willink and Daniel Willink, against James Renwick and Robert J. Renwick, one of the defendants upon whom the *scire facias* was served, pleaded that *John A. Willink* ought not, together with Daniel Willink, to have and maintain the action, because *after* the recovery and before the issuing of the writ of *scire facias* to wit, on the 22d October, 1819, John A. Willink, being an *insolvent debtor* within the meaning of the act to abolish

[ *64 ]  imprisonment for *debt in certain cases, presented a petition, &c.

and *executed an assignment* to W. B. and T. H. assignees, appointed to receive the same, of all his estate real and personal, and of all books, vouchers and *securities* relating thereto, for the use of all his creditors. By virtue whereof all the interest of *John A. Willink*, in the judgment passed to his *assignees*, wherefore the defendant prayed judgment, &c. To this plea the plaintiffs demurred.

*S. Stevens*, for the plaintiffs.

*J. L. Wendell*, for the defendant.

*By the Court*, COWEN, J. The form and effect of the assignment under the insolvent act of 1819, is the same as under the previous statute of 1813. *Sess. Laws of* 1819, *p.* 116, 117, *a.* § 2, 3, 4. 1 *R. L. of* 1813, *p.* 463, 468, § 8 *and* 19. The insolvent is required to assign and deliver all his estate, real and personal, in law and equity and all books, vouchers and securities relating to the same. The 19th section of the act of 1813, expressly declares that the assignees may recover such estate, real or personal, in their own names. But this declaration was unnecessary, and I apprehend comes even short of the legal effect of the previous section which requires that the choses in action of the insolvent, with all securities, shall be assigned and delivered. Such a provision in terms affixes the same legal consequence as the common law had ascribed to the sale of a chose in possession. It di-

vests the title of the insolvent, and disables him afterwards to sue in his own name. The same consequence follows in respect to any moiety which he may own as tenant in common or joint tenant with another. Surely the legislature never intended to leave in these insolvents the legal estate, and embarrass the assignees with the various disadvantages which attend the enforcement of the mere equitable right, resulting from a common law assignment. The divesting and transfer are as complete as those of a current rent service on an assignment of his interest by a reversioner.

*To this doctrine, it is admitted that *Eckhardt and others* v. [ *65 ] *Wilson*, 8 *T. R.* 140, is exactly in point ; and that case shows moreover that the debt being jointly due to the insolvent and others, forms no exception. Indeed that was, in principle, the identical case before us. The defendant pleaded an insolvent assignment by one of several plaintiffs, and the plea was adjudged good, because, as the court say, " the bankrupt's right of suing was vested in the assignees." There is no case overruling or questioning this decision. In *Kinnear* v. *Tarrant*, 15 *East*, 621, a *sci. fa.* was barred by just such a plea as we have before us. There are indeed exceptions to the doctrine, and some were noticed in *Eckhardt* v. *Wilson*. It was agreed that a bankrupt might bring trover on his special property in goods still continuing in his possession. So of a promise made to him intermediate his bankruptcy and certificate. But even this is not allowed where the assignees require a payment to themselves. *Kitchen* v. *Bartch*, 7 *East*, 53. The same exception was extended to a debt accruing due to an insolvent, intermediate his petition to the insolvent debtor's court and his assignment. *Taylor* v. *Buchanan*, 6 *Dowl. & Ryl.* 491 ; 4 *Barn. & Cress.* 419, *S. C.* Why such cases should be made an exception, I never could see ; for it was agreed in *Kitchen* v. *Bartch*, that all the bankrupt's credits pass by his assignment, whether they arise before or after his bankruptcy. Other exceptions might be mentioned, but they only serve, as usual, to prove the rule. One was in *Raymond* v. *Johnson*, 11 *Johns. R.* 488, where the insolvent himself sued before the assignment was made.

The case mainly relied on for the plaintiffs is one which raised the question on foreign assignments *in invitum*. *Bird* v. *Pierpont*, 1 *Johns. R.* 118. Such an assignment was held, at a very early period, not to be legally operative here ; and that we must proceed, if at all, in the name of the bankrupt. It is a question of the *lex fori*. *Bird* v. *Caritat*, 2 *Johns. R.* 342. The same thing was afterwards held of a voluntary assignment under the insolvent law of New Jersey. *Raymond* v. *Johnson*, 11 *Johns. R.* 488. But the court of errors have lately refused to give such an *as- [ *66 ] signment any force whatever, even in equity. *Abraham* v. *Plestoro*, 3 *Wendell*, 538. The general doctrine established by *Eckhardt* v. *Wilson* has been distinctly recognized and applied to debts due an insolvent debtor

in this state, so late as *Garr* v. *Gomez*, 9 *Wendell*, 649, 655 ; and the case of *Bird* v. *Caritat*, which was a suit by several, retained the name of two of the original creditors, the foreign bankrupts while it put the assignees of another, a domestic bankrupt, to join. The question of joinder was not raised, to be sure. It passed without dispute, doubtless on the authority of *Eckhardt* v. *Wilson*, and various other cases. *See Thomason* v. *Frere*, 10 *East*, 418. *Murray* v. *Murray*, 5 *Johns. Ch. R.* 70 ; *Anonymous*, 12 *Mod.* 446. *S. P.*

The plea is clearly good, and judgment must be rendered for the defendant, with leave for the plaintiff to withdraw his demurrer, and reply, on the usual terms.